Graham B. LippSmith (SBN 221984)
g@lippsmith.com
MaryBeth LippSmith (SBN 223573)
mb@lippsmith.com
Jaclyn L. Anderson (SBN 258609)
jla@lippsmith.com
**LIPPSMITH LLP**
555 S. Flower Street, Suite 4400
Los Angeles, California 90071
Tel: (213) 344-1820
Fax: (213) 513-2495

Brad R. Sohn (*Admitted Pro Hac Vice*)
Brad@BradSohnLaw.com
The Brad Sohn Law Firm, PLLC
1600 Ponce DeLeon Boulevard, Suite 1205
Coral Gables, FL 33134
Tel: (786) 708-9750
Fax: (305) 397-0650

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN ADLER AND GAVIN MCDONOUGH, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>COMMUNITY.COM, INC.<br><br>　　　　　Defendant. | Civil Case No.: 2:21-cv-02416-SB-JPR<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**(1)　VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)**<br>**(2)　VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(c)**<br>**(3)　VIOLATIONS OF CIPA, CAL. PENAL CODE § 631**<br>**(4)　VIOLATIONS OF CIPA, CAL. PENAL CODE § 632**<br>**(5)　VIOLATIONS OF CIPA, CAL. PENAL CODE § 632.7**<br>**(6)　VIOLATIONS OF ECPA, 18 U.S.C. § 2511** |

## **INTRODUCTION**

1.      This action arises out of two distinct business practices of Defendant Community.com, Inc ("Defendant").

2.      The first is Defendant's practice of sending autodialed telemarketing calls to consumers in the absence of their prior express written consent, and to persons whose numbers are on the National Do-Not-Call Registry, in violation of two separate provisions Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

3.      Plaintiff Adler had not provided Defendant prior express written consent to send telemarketing texts using an automatic telephone dialing system to his cellular telephone, prior to Defendant's sending autodialed telemarketing texts to his cell phone.

4.      Plaintiff McDonough had not provided Defendant prior express written consent to send telemarketing texts using an automatic telephone dialing system to his cellular telephone, prior to Defendant's sending autodialed telemarketing texts to his cell phone.

5.      Plaintiff Adler has been on the National Do-Not-Call Registry since May 11, 2011.

6.      Plaintiff McDonough has been on the National Do-Not-Call Registry since August 30, 2015.

7.      Accordingly, Plaintiffs bring the TCPA portion of this action on behalf of themselves and classes of similarly situated individuals under 47 U.S.C. § 227(b) and 47 U.S.C. § 227(c).

8.      The second practice at issue is Defendant's practice of intercepting Plaintiff and putative Class Member communications intended for the celebrities and others who provide their "Community" telephone number to the public ostensibly for "direct communication" with that celebrity.

9.      Defendant's unconsented-to and undisclosed eavesdropping on, interception of, and recording of these communications violate the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630, *et seq.*

10.   Defendant's unconsented-to and undisclosed eavesdropping on, interception of, and recording of these communications also violate the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.*

11.   Accordingly, Plaintiffs bring the eavesdropping portion of this action on behalf of separate classes of similarly situated individuals under CIPA and ECPA.

## JURISDICTION AND VENUE

12.   This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA and the ECPA, which are federal statutes.

13.   The Court has supplemental jurisdiction over Plaintiffs' CIPA claim pursuant to 28 U.S.C. § 1367.

14.   This Court has jurisdiction over Defendant because Defendant conducts business transactions in this District, has committed tortious acts in and from this District, is headquartered in this district, and has offices located in this District.

15.   Venue is proper in this District because Defendant conducts significant amounts of business transactions within this District, is headquartered in this district, and has offices located in this District, and because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## PARTIES

16.   Plaintiff Adler is, and at all times mentioned herein was, a citizen and resident of New Jersey.

17.   Plaintiff McDonough is, and at all times mentioned herein was, a citizen and resident of Massachusetts.

18.   Plaintiff Adler is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

19.   Plaintiff Adler is, and at all times mentioned herein was, a "person" as defined by Cal. Penal Code § 7.

20.   Plaintiff McDonough is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**FIRST AMENDED CLASS ACTION COMPLAINT**

21.     Plaintiff McDonough is, and at all times mentioned herein was, a "person" as defined by Cal. Penal Code § 7.

22.     Defendant is, and at all times mentioned herein was, a Delaware corporation headquartered at 1547 9th Street, Santa Monica, CA 90401

23.     Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

24.     Defendant is, and at all times mentioned herein was, a "person" as defined by Cal. Penal Code § 7.

25.     Defendant is, and at all times mentioned herein was, a "person" as defined by Cal. Penal Code § 632(b).

26.     Defendant is, and at all times mentioned herein was, a "person" pursuant to 18 U.S.C. § 2510(6).

**TCPA**

27.     The TCPA was passed in 1991 to help prevent unwanted telephone calls and solicitations, provide power to consumers to prevent unwanted solicitations, and rein in unrestricted telemarketing. *See* 47 U.S.C. § 227, *et seq.*

28.     Relevantly, the TCPA provides private rights of action for three types of telemarketing-related conduct.

29.     First, Section 227(b) of the TCPA prohibits initiating a telemarketing call using an automatic telephone dialing system without the prior express written consent of the called party.

30.     "Telemarketing" means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

31.     "Prior express written consent" requires a signed writing that clearly authorizes the seller to deliver to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200(f)(9).

32.     This written agreement must <u>clearly and conspicuously</u> disclose that the calls would be made using an automatic telephone dialing system or an artificial or prerecorded voice, and that the person is not required to sign the agreement as a condition of purchasing any property, goods, or services. *Id.* at (f)(9)(i)(A-B).

33.     A violation of § 227(b) carries statutory damages of $500 to $1,500 per call.

34.     Second, the TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

35.     These regulations are codified at 47 CFR 64.1200(c)(1-2).

36.     Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

37.     A violation of 47 C.F.R. § 64.1200(c) carries additional statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

38.     Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

## **GENERAL FACTS RELEVANT TO PLAINTIFFS' TCPA CLAIMS**

39.     On March 15, 2021, seven-time Super Bowl winning quarterback Tom Brady tweeted "Trying something new here…Hit me up at (415)612-1737. Rule #1…no texting on Gamedays."

40.     Accompanying this was a video in which Mr. Brady begins:

Hey what's up everyone? So this is a real first for me, but I've been talked into giving out my cell phone on the internet. So, listen, rule #1 before we get into any of this: no texting on gamedays. Really though, what this is is it's a tool that will allow me to communicate more directly with my fans and my followers where we can actually do a better job of responding to you and your questions

**FIRST AMENDED CLASS ACTION COMPLAINT**

and all the great messages. Sometimes it gets hard to sort through the "you suck, Brady" in the comments. I know there's quite a few of those over the years. It's usually from the Jet fans. But to be clear, if you do text me "you suck", yes I'll see it, and uh, I may or may not respond. So shoot me a message, I promise I'm going to get back to as many of you guys as possible when I have the time.

41.   When a person texts the 1737 number, they receive two automated text messages.

42.   The first message is a telemarketing message.

43.   The first message contains a link to Defendant's community.com service which, when clicked, requires the texting party to sign up for Defendant's service to proceed further.

44.   Second, the texting party receives a telemarketing text message ostensibly from the celebrity encouraging the texting party to click the link.

45.   In the case of Mr. Brady, the second message stated:

What's up! Yes, this is actually Tom Brady. This message is automated but everything else will come directly from me, on my phone. Click the link and add yourself so you're in my contacts.

46.   This text message exchange is not a one-off nor is it unique to Mr. Brady.

47.   Instead, this bait-and-switch is Defendant's business.

48.   Defendant's clients—such as Mr. Brady—receive an assigned telephone number which they then present as "their" number at which fans and others can communicate with them directly.

49.   It is only after someone sends a text message to the number that they learn that the number is not actually the celebrity's personal number, but is instead part of a social media service for which the person must sign up before being able to continue ostensibly corresponding with the celebrity.

50.   The more people sign up to communicate with a given celebrity, the more Defendant charges that celebrity.

**FIRST AMENDED CLASS ACTION COMPLAINT**

51.     Indeed, community.com appears to have employed this same ruse through other prominent personalities' social media accounts, specifically including but not limited to: Jennifer Lopez, Ellen DeGeneres, Karlie Kloss, Ashley Graham, The Jonas Brothers, Kerry Washington, Arianna Huffington, Mark Cuban, Tony Hawk, Ryan Seacrest, Deepak Chopra, and Sophia Bush.

52.     As described in a currently-pending fraud complaint against it (unrelated to its TCPA violations), Case No. 20-cv-07552 (C.D. Cal.):

> Community is a technology start-up that utilizes an app that permits its clients—including actors, musicians, athletes, and social media influencers—to communicate directly with their fans or followers through SMS text messaging. Its stated purpose is to allow more meaningful dialogue between the celebrities and their "community" in a world dominated by a flurry of social media apps that can make fans feel invisible or disengaged. Community's clients include, but are not limited to, Ashton Kutcher, Jennifer Lopez, John Legend, Paul McCartney, Amy Schumer, Marshmello, Kerry Washington, Sean "Diddy" Combs, Mark Cuban, Sophie Bush, and Ellen DeGeneres.

53.     And as further explained in an oprahmag.com article[1]:

> Those numbers that celebrities are sharing publicly are largely set up through a company called Community. Originally started as Shimmur, it rebranded as Community in 2018, attracting funding from Ashton Kutcher and his investment partner Guy Oseary. The company's website describes it as "a first-of-its-kind conversation platform—enabling direct, meaningful and instant communication at a massive scale, all through text messaging.

54.     On Defendant's sign up page, located at https://www.community.com/get-a-number, it specifically states that pricing is "based on your audience size."

---

[1] https://www.oprahmag.com/entertainment/a30809606/celebrity-phone-numbers-texting/

**FIRST AMENDED CLASS ACTION COMPLAINT**

55.     The oprahmag.com article further notes that "[w]e texted several celebrities who have shared phone numbers, and here's what we heard back", and includes this screenshot:



56.     The same process—text, receive back a link to sign up for Defendant's service, and an immediate follow up "from" the celebrity—occurs with every celebrity investigated, including Ashton Kutcher, whose January 29, 2019 tweet of what he claimed to have been "his" phone number is the first known celebrity to publicize a phone number assigned by Defendant.

57.     When a text is sent to Mr. Kutcher's assigned phone number, two automated messages are sent back: the link, and a message purporting to be from Mr. Kutcher, but stating "[t]his is an autotext."

58.     Because Defendant's first text message contains a link promoting its service (which is required to continue texting "with" the celebrity), and its second encourages recipients to click the link and sign up for Defendant's services, Defendant's automated text messages are telemarketing.

59.     By analogy, it is no different than sending back a link to Facebook and requiring the user to sign up for Facebook to be part of a celebrity's group.

60.     While signing up for Defendant's service is free to "fans", Defendant

**FIRST AMENDED CLASS ACTION COMPLAINT**

charges its clients based on audience size.

61.    In other words, the more people sign up for Defendant's service, the more Defendant gets paid.

## AUTOMATIC TELEPHONE DIALING SYSTEM

62.    Defendant's text messages use an automatic telephone dialing system.

63.    As stated in the response from Mr. Brady, Mr. Kutcher, and others, the texts are automated.

64.    In addition, the responses are instantaneous—far faster than any human could respond, let alone extraordinarily busy and in-demand celebrities could respond to a fan's text message.

65.    Upon information and belief, Defendant's system operates by storing numbers in a database, but then, rather than dialing numbers directly from that database, it sequentially crawls that database to produce numbers to be called or sent messages based on a variety of parameters.

66.    Upon information and belief, the storage process uses a sequential number generator.

67.    Upon information and belief, Defendant's database, like most databases, creates new records in its database using auto incrementation.

68.    Upon information and belief, the auto increment function automatically generates sequential numeric values every time a new record is to be inserted into the database table (i.e. when a new user registers).

69.    For example, the starting value for auto increment might be "1", and then for each subsequent row of data (a new customer record), the auto increment value increases.

70.    In this scenario, when the second row of data is added, auto increment becomes "2", and so on for each new record.

71.    Upon information and belief, in Defendant's case, these database rows consist of, among other things, the telephone numbers of Plaintiff and putative class

**FIRST AMENDED CLASS ACTION COMPLAINT**

members.

72.   Accordingly, upon information and belief, this auto increment function uses sequentially generated numbers to store numbers to be called or messaged.

73.   When those numbers are to be messaged, Defendant's system then produces those numbers as described below.

74.   The messaging process also uses sequential number generation, upon information and belief.

75.   For example, Defendant's video describing its product[2] shows that its system can generate numbers from its stored database of numbers using parameters such as "Location", "Gender", "Age"[3], leading to "sub-databases" of numbers to be messaged, such as "210 people who have birthdays today" and "2,300 females within 20 miles of Atlanta, GA"[4]

76.   This requires Defendant's system to "produce" numbers to be called "sequentially," upon information and belief.

77.   Put another way, this is generally how Defendant's system operates:



78.   At no point, upon information and belief, are messages sent directly to the

---

[2] https://youtu.be/blCA55XyrvQ, last accessed April 1, 2021
[3] *Id.* at 0:46
[4] *Id.* at 0:48-0:49

**FIRST AMENDED CLASS ACTION COMPLAINT**

numbers stored in the "Main Database of numbers."

79.    The main database simply provides the range of numbers for number generation and production, upon information and belief.

80.    Defendant's system, upon information and belief, produces numbers to be called by generating those numbers sequentially from that main database into a sub-database, and it is from that sub-database that numbers are messaged.

81.    This is true even if Defendant's system is sending a message to *all* recipients in the main database, because Defendant's system is ostensibly set up to honor opt-outs.

82.    In Defendant's FAQ located at https://www.community.com/help, it states that to stop receiving messages from a Community Leader, one would text "stop."

83.    To begin receiving messages again, one would text "start."

84.    Defendant's system, then, does not "delete" a person from its main database when the person texts "stop", as they are able to then text "start" to resume messages without signing up/completing their profile as they were required to initially (meaning that information remains in the main database, the number is just flagged as "do not message").

85.    This is bolstered by a subsequent FAQ item providing a different and more involved process to delete an entire account.

86.    What this means, then, is that any time Defendant or one of its "Community Leaders" wants to send a text message, Defendant's application crawls the main database start to finish (e.g. sequentially) looking for those telephone numbers not flagged "do not message" and, from that sequential process, produces those numbers to be called.

87.    Accordingly, Defendant's system has the capacity produce numbers to be called by sequentially generating those numbers.

## PLAINTIFF ADLER'S TCPA FACTS

88.    Plaintiff sent a text message to the 1737 number.

89.     Plaintiff sent this text message from Plaintiff's telephone number, ending in 0689.

90.     Plaintiff received the two automated telemarketing text messages responses described herein to her telephone number ending in 0689.

91.     Plaintiff did not provide Defendant with any prior express written consent for telemarketing text messages.

92.     Plaintiff did not provide prior express written consent to receive the first telemarketing text message.

93.     Plaintiff did not provide prior express written consent to receive the second telemarketing text message.

94.     Accordingly, each of Defendant's texts to Plaintiff using an automatic telephone dialing system or prerecorded voice violated 47 U.S.C. § 227(b).

95.     For violations of 47 U.S.C. § 227(b), Plaintiff is entitled to $500 per call.

96.     Plaintiff is entitled to $1,500 per call for violations of § 227(b) if the Court finds that the violations were knowing and/or willful.

97.     In addition, Plaintiff's telephone number has been on the National Do-Not-Call Registry since May 11, 2011.

98.     Defendant's text messages both constitute "telephone solicitations", as they were telemarketing without an established business relationship or prior express written consent.

99.     As such, Defendant's text messages to Plaintiff Duffee separately violate 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

100.    For violations of 47 U.S.C. § 227(c), Plaintiff is entitled to $500 per call.

101.    Plaintiff is entitled to $1,500 per call for violations of § 227(c) if the Court finds that the actions were knowing and/or willful.

## **PLAINTIFF MCDONOUGH'S TCPA FACTS**

102.    Plaintiff saw Mr. Brady's tweet and sent a text message to the 1737 number.

**FIRST AMENDED CLASS ACTION COMPLAINT**

103.   Plaintiff sent this text message from his telephone number ending in 0743.

104.   Plaintiff received the two automated telemarketing text messages responses described herein to his telephone number ending in 0743.

105.   Plaintiff did not provide Defendant with any prior express written consent for telemarketing text messages.

106.   Plaintiff did not provide his prior express written consent to receive the first telemarketing text message.

107.   Plaintiff did not provide his prior express written consent to receive the second telemarketing text message

108.   Accordingly, each of Defendant's texts to Plaintiff using an automatic telephone dialing system or prerecorded voice violated 47 U.S.C. § 227(b).

109.   For violations of 47 U.S.C. § 227(b), Plaintiff is entitled to $500 per call.

110.   Plaintiff is entitled to $1,500 per call for violations of § 227(b) if the Court finds that the violations were knowing and/or willful.

111.   In addition, Plaintiff's telephone number has been on the National Do-Not-Call Registry since August 30, 2015.

112.   Defendant's text messages both constitute "telephone solicitations", as they were telemarketing without an established business relationship or prior express written consent.

113.   As such, Defendant's text messages to Plaintiff Duffee separately violate 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

114.   For violations of 47 U.S.C. § 227(c), Plaintiff is entitled to $500 per call.

115.   Plaintiff is entitled to $1,500 per call for violations of § 227(c) if the Court finds that the actions were knowing and/or willful.

## CIPA CLAIM

116.   As discussed above, Plaintiffs sent text messages to a telephone number held out as being Tom Brady's direct cell phone number.

117.   Instead, Defendant intercepted, recorded, and scanned the messages

**FIRST AMENDED CLASS ACTION COMPLAINT**

intended for Mr. Brady.

118.   It similarly did so with respect to the messages sent to any numbers assigned to its "clients."

119.   Defendant's privacy policy states the following:

> If you start a conversation with a Community Leader by sending a text message to their Community Number, we collect your phone number along with the contents of the text message, so we won't need to ask you for it.
> …
> When you send or reply to messages via Community, we collect your messages, along with message-related information (such as the phone number from which the message was sent, when the message was sent, and whether the message includes a particular word, phrase, or emoji).

120.   While this language would ostensibly protect Defendant's interception, recording, and scanning of text messages sent *after* a person signs up for Defendant's service and agrees to its terms and privacy policy, it is not disclosed to consumers (like Plaintiffs) prior to their initial text to one of the users of Defendant's platform (or "Community Leaders", as Defendant refers to them).

121.   In other words, Defendant intercepts and records, without consent, the initial messages intended for its celebrity clients and essentially holds them hostage from the celebrity clients until the sender signs up for Defendant's social networking service.

122.   Instead, it is part and parcel of Defendant's business model to hide their involvement at all at the outset.

123.   This is done to give the appearance of more "intimate" conversions between fans and celebrities.

124.   At no point prior to sending the initial text message to any of the celebrity telephone numbers are consumers informed or do they consent to Defendant's collection and scanning of the text message intended for that celebrity.

125.   For example, Tom Brady held the telephone number out as his personal cell phone number, and discussed it in a way to suggest that the messages would be

**FIRST AMENDED CLASS ACTION COMPLAINT**

1  going directly to him (e.g. to the point if you sent a text on gameday, it could be

2  disruptive to him).

3      126.  The other celebrities and "community leaders" on Defendant's platform

4  make similar representations

5      127.  For example, as discussed, on January 29, 2019, Ashton Kutcher—one of

6  the main investors in Defendant—tweeted:

7

8

9

10

11

12



13

14

15

16

17

18

19      128.  Many, if not most, of the more than 900 persons listed in Defendant's

20  directory have tweeted or posted similarly.

21      129.  On January 4, 2021, Kerry Washington tweeted "Hey. If you need a ride

22  to the polls tomorrow. Or your friends may need a ride to the polls in Georgia…text

23  me! 718-400-7118."

24      130.  On August 6, 2020, Scott Disick tweeted "Text me. Let's talk real estate

25  and apparel. +1 818-514-7985."

26      131.  On April 24, 2020, David Dobrik posted a video on YouTube, and in the

27  caption wrote "Text me for the next time we do surprise[sic] so I can let you know: 847-

28  250-9391."

**FIRST AMENDED CLASS ACTION COMPLAINT**

132.   On January 29, 2020, James Charles tweeted "hehehehe text me 310-905-8746."

133.   On February 26, 2020, Reba McEntire posted on Instagram "Text me (615) 436-8697[.] In case you haven't heard, you can text me at (615) 436-8697! We're trying out something new!" alongside a video in which she stated, among other things, "starting today, you can text me directly—I'm reading this because I don't know the number yet. You know some people memorize their telephone number—not me. The telephone number you can text me directly on is 615-436-8697…You can text me directly."

134.   On October 24, 2019, James Murray posted on Facebook: "Wanna text me directly? Seriously. Text here (US & Canada only for now): 917-336-4908. I pretty much guarantee my 2nd text back will be a puppy photo. Joey joined as well – look at his social media for his number too!"

135.   On October 3, 2019, Sean Combs tweeted "Hey. Text me 917746144" and followed it up with a video showing him reading text messages received on his supposedly personal cell phone.

136.   On November 1, 2019, Ellen Degeneres tweeted "It's true – now you can text me. Here's my Community number. This is gonna be fun. 310-455-8858."

137.   Ms. Degeneres' passing and ambiguous reference to a "community number" is the closest anyone gets to suggesting the possibility that the number may not be their actual personal cell phone number, but even this falls far short of informing consumers and getting consent that Defendant would intercept and record the communications sent to those numbers.

138.   Upon information and belief, Defendant's very company name—Community—is intentional in its ambiguity if mentioned alongside a telephone number.

139.   Upon information and belief, Defendant works with its celebrity "clients" to come up with scripts or general ideas on how to best discuss reveal their telephone number to the public.

**FIRST AMENDED CLASS ACTION COMPLAINT**

140.   As far as Plaintiffs and putative CIPA Class Members (defined below) were concerned, the telephone number celebrities like Tom Brady, Ashton Kutcher, and others provided to the public were direct lines to that celebrity, not subject to interception and logging by interlopers such as Defendant.

141.   This gives an objectively reasonable expectation of confidentiality and that the conversation is not being overheard or recorded by an interloper.

142.   This is especially important given the language some of the celebrities, such as Defendant's investor Mr. Kutcher, used in inviting consumers to be "real" with him via text, which suggests personal conversation.

143.   Further, Plaintiffs used their cell phones in these communications that were intercepted.

144.   This is overwhelmingly, if not exclusively, the case for putative CIPA Class Members, as it is uncommon for ordinary consumers to send text messages using something other than a cell phone.

145.   Accordingly, Defendant has violated three separate provisions of CIPA.

146.   Cal. Penal Code § 631(a) makes liable "[a]ny person … who willfully and without the consent of all parties to the communication … reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state[.]"

147.   Defendant did not have Plaintiffs' consent to read or attempt to read or learn the contents of the initial message intended for Mr. Brady, nor did it have the consent to read or attempt to read or learn the contents of the initial messages putative Class Members sent to any of Defendant's celebrity clients.

148.   Defendant read, or attempted to read, or attempted to learn the contents of the messages sent to its celebrity clients before those messages actually reached their celebrity clients (i.e. while in transit).

149.   In fact, unbeknownst to Plaintiffs and putative Class Members, the

**FIRST AMENDED CLASS ACTION COMPLAINT**

messages sent ostensibly to Defendant's celebrity clients were instead rerouted to and captured by Defendant's servers in California, and never actually reached the celebrity (essentially being held hostage until Plaintiffs and putative Class Members signed up for Defendant's services).

150.   Defendant therefore violated § 631.

151.   Cal. Penal Code § 632(a) makes liable "[a] person who, intentionally and without the consent of all parties to a confidential communication, uses a[] … recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a … telephone[.]"

152.   Cal. Penal Code § 632(c) defines "confidential communication" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto."

153.   Prior to sending their first text message, Plaintiffs and putative Class Members were led to believe they were texting directly and privately with the celebrity who provided their phone number, making the communication a "confidential communication."

154.   Defendant, using its software application (a recording device) eavesdropped upon the confidential communications Plaintiffs and putative Class Members sent to various celebrities.

155.   Plaintiffs and putative Class Members did not consent to Defendant's eavesdropping and recording of these communications.

156.   Defendant therefore violated § 632(a).

157.   Cal. Penal Code § 632.7(a) makes liable "[e]very person who, without the consent of all parties to the communication, intercepts or receives and intentionally records, or assists in the interception or reception and recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline

telephone, or a cordless telephone and a cellular radio telephone[.]"

158.   Plaintiffs and putative Class Members sent the text messages from their cell phones to what was held out as the personal telephone number of various celebrities.

159.   Defendant instead intercepted, received, recorded, and scanned these communications without Plaintiffs' and putative Class Members' consent.

160.   Defendant therefore violated § 632.7.

161.   Each of the aforementioned violations are enforceable privately via Cal. Penal Code § 637.2, which provides for statutory damages of $5,000 per violation.

162.   As Defendant committed the three violations described above, Plaintiffs and putative Class Members are entitled to $15,000 for each text message sent to Defendant's clients.

163.   The policies to intercept, receive, record, and scan these messages were designed and implemented in California.

164.   Upon information and belief, the messages were intercepted, recorded, and stored on servers located in California.

## ECPA CLAIM

165.   ECPA makes liable any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication[.]" 18 U.S.C. § 2511(1)(a).

166.   "Electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce[.]"

167.   Plaintiffs and putative ECPA Class Members text messages are electronic communications as defined by the statute.

168.   "Intercept" means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.

**FIRST AMENDED CLASS ACTION COMPLAINT**

169.   "Electronic, mechanical, or other device" means "any device or apparatus which can be used to intercept a wire, oral, or electronic communication[.]"

170.   Defendant's software application that captures Plaintiffs' and putative ECPA Class Members text messages is an electronic device.

171.   Defendant's use of this software application to divert, capture, and record Plaintiffs' and putative ECPA Class Members text messages qualifies as an "intercept."

172.   A person who violates § 2511(1)(a) is liable to any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used for $10,000 in statutory damages.

173.   For the same reasons as set forth for Plaintiffs' CIPA Claims, Defendant is liable to Plaintiffs' and putative ECPA Class Members for violations of ECPA.

## CLASS ACTION ALLEGATIONS

174.   Plaintiffs bring this action under Fed. R. Civ. P. 23 on behalf of three proposed Classes, defined as follows:

**B Class**: Since March 18, 2017, Plaintiffs and all persons who sent a text message to a number assigned to one of Defendant's clients and received back at their cellular telephone number an automated text message containing a link to sign up for Defendant's website.

**C Class:** Since March 18, 2017, Plaintiffs and all persons who sent a text message to a number assigned to one of Defendant's clients and received back at their cellular telephone number two automated text messages of the type described herein.

**CIPA Class:** Since April 5, 2020, Plaintiffs and all persons in the United States who sent a text message to a number assigned to one of Defendant's clients and did not subsequently register for Defendant's

**FIRST AMENDED CLASS ACTION COMPLAINT**

Community.com service.

**ECPA Class:** Since April 5, 2019, Plaintiffs and all persons in the United States who sent a text message to a number assigned to one of Defendant's clients and did not subsequently register for Defendant's Community.com service.

175.   Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

176.   The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

177.   The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant maintains written and electronically stored data showing:

    a.   The telephone numbers which sent a text message to any of Defendant's "Community" telephone numbers;

    b.   The time period(s) during which Defendant sent its text messages;

    c.   The telephone numbers to which Defendant sent its text messages;

    d.   The telephone numbers for which Defendant had prior express written consent;

    e.   The purposes of such text message;

    f.   The names, phone numbers, and email addresses of Class members.

178.   The Classes are comprised of thousands of individuals nationwide.

179.   There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

**FIRST AMENDED CLASS ACTION COMPLAINT**

a. Whether Defendant intercepted, eavesdropped on, and/or recorded the contents of the text messages Plaintiffs and putative CIPA and ECPA Class Members sent;

b. The mechanisms used to intercept, eavesdrop on, and/or record the conversations;

c. Whether Defendant obtained consent to do so from all intended parties to intercept, eavesdrop on, and/or record the conversations;

d. Whether Defendant obtained prior express written consent prior to sending its telemarketing text messages;

e. Whether Defendant sent its text messages using an automatic telephone dialing system;

f. Whether Defendant's text messages were telemarketing.

g. Whether Plaintiffs and the Classes were damaged, and the extent of damages for such violations; and

h. Whether Defendant should be enjoined from engaging in such conduct in the future.

180.   Plaintiff Adler and Plaintiff McDonough are members of the B Class in that Defendant sent telemarketing text messages to their cellular telephones without their prior express written consent.

181.   Plaintiff Adler and Plaintiff McDonough are members of the C Class in that Defendant sent two or more telemarketing text messages to their cellular telephones, which were on the National Do-Not-Call Registry at the time of the calls.

182.   Plaintiff Adler and Plaintiff McDonough are members of the CIPA and ECPA Class in that they sent a text message to a number assigned to one of Defendant's clients and did not subsequently register for Defendant's services.

183.   Plaintiffs' claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

**FIRST AMENDED CLASS ACTION COMPLAINT**

184.    Plaintiffs have no interests antagonistic to, or in conflict with, the Classes.

185.    Plaintiffs will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent themselves and the Classes.

186.    Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

187.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

188.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

189.    Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION
## Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)
### (On Behalf of Plaintiffs and the B Class)

190.    Plaintiffs and the proposed B Class incorporate the foregoing allegations as if fully set forth herein.

191.    Defendant sent automated text messages to Plaintiffs' and B Class Members' telephone numbers without prior express written consent.

192.    As alleged, these calls all used an "automatic telephone dialing system."

193.    As alleged, these text messages were telemarketing.

194.    The texts were not sent for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

195.    Plaintiffs and B Class Members are entitled to an award of $500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

196.    Plaintiff and B Class Members are entitled to an award of treble damages

**FIRST AMENDED CLASS ACTION COMPLAINT**

in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

## SECOND CAUSE OF ACTION

### Violations of the TCPA, 47 U.S.C. § 227(c)

### (On Behalf of Plaintiffs and the C Class)

197.   Plaintiffs and the proposed C Class incorporate the foregoing allegations as if fully set forth herein.

198.   Plaintiffs' cellular telephone numbers have been on the National Do-Not-Call Registry since May 11, 2011 and August 30, 2015, respectively.

199.   In sending two automated telemarketing text messages to Plaintiffs' and C Class Members' cellular telephones, in the absence of prior express written consent or an established business relationship, Defendant violated 47 U.S.C § 227(c).

200.   Plaintiffs and C Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

201.   Plaintiffs and C Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## THIRD CAUSE OF ACTION

### Violations of CIPA, § 631

### (On Behalf of Plaintiffs and the CIPA Class)

202.   Plaintiffs and the proposed CIPA Class incorporate the foregoing allegations as if fully set forth herein.

203.   Plaintiffs and CIPA Class Members sent text messages to telephone numbers intending and expecting direct communication with the person held out as owning that number.

204.   At no point prior to sending these messages did Defendant, the intended recipient of the message, or anyone else disclose that the text message sent, including its contents, would not actually reach the intended recipient until after Plaintiffs and putative CIPA Class Members signed up for Defendant's services, and would instead

**FIRST AMENDED CLASS ACTION COMPLAINT**

be diverted to and recorded on Defendant's servers in California and read.

205.   Plaintiffs and CIPA Class Members therefore did not consent to Defendant's interception and reading.

206.   This interception and reading occurred while the messages were in transit to the intended recipient.

207.   Defendant intercepted and read these messages intentionally.

208.   Accordingly, Defendant violated Cal. Penal Code § 631.

209.   Plaintiffs and CIPA Class Members are entitled to $5,000 for each wrongfully intercepted and read text message pursuant to Cal. Penal Code § 637.2.

## FOURTH CAUSE OF ACTION

### Violations of the CIPA, § 632

### (On Behalf of Plaintiffs and the CIPA Class)

210.   Plaintiffs and the proposed CIPA Class incorporate the foregoing allegations as if fully set forth herein.

211.   Plaintiffs and CIPA Class Members sent a text message to a telephone number intending and expecting direct communication with the person held out as owning that number.

212.   Plaintiffs and CIPA Class Members had an objectively reasonable expectation of privacy in these communications.

213.   At no point prior to sending these messages did Defendant, the intended recipient of the message, or anyone else disclose that the text message sent, including its contents, would be eavesdropped on and recorded by Defendant through the use of Defendant's software application, and stored on Defendant's servers in California.

214.   Plaintiffs and CIPA Class Members therefore did not consent to Defendant's eavesdropping and recording.

215.   Accordingly, Defendant violated Cal. Penal Code § 632.

216.   Plaintiffs and CIPA Class Members are entitled to $5,000 for each wrongfully intercepted and read text message pursuant to Cal. Penal Code § 637.2.

**FIRST AMENDED CLASS ACTION COMPLAINT**

**FIFTH CAUSE OF ACTION**

**Violations of CIPA, § 632.7**

**(On Behalf of Plaintiff and the CIPA Class)**

217.   Plaintiffs and the proposed CIPA Class incorporate the foregoing allegations as if fully set forth herein.

218.   Plaintiffs and CIPA Class Members sent text messages to telephone numbers intending and expecting direct communication with the person held out as owning that number.

219.   Plaintiffs and CIPA Class Members used their cellular telephones to send these text messages.

220.   At no point prior to sending these messages did Defendant, the intended recipient of the message, or anyone else disclose that the text message sent, including its contents, would be intercepted and recorded by Defendant on its servers in California.

221.   Plaintiffs and CIPA Class Members therefor did not consent to Defendant's interception and recording.

222.   Accordingly, Defendant violated Cal. Penal Code § 632.7.

223.   Plaintiffs and CIPA Class Members are entitled to $5,000 for each wrongfully intercepted and read text message pursuant to Cal. Penal Code § 637.2.

**SIXTH CAUSE OF ACTION**

**Violations of ECPA, § 632.7**

**(On Behalf of Plaintiff and the ECPA Class)**

224.   Plaintiffs and the proposed ECPA Class incorporate the foregoing allegations as if fully set forth herein.

225.   Plaintiffs and ECPA Class Members sent text messages to telephone numbers intending and expecting direct communication with the person held out as owning that number.

226.   These text messages qualify as electronic communications.

**FIRST AMENDED CLASS ACTION COMPLAINT**

227.   At no point prior to sending these messages did Defendant, the intended recipient of the message, or anyone else disclose that the text message sent, including its contents, would be intercepted and recorded by Defendant on its servers in California.

228.   Plaintiffs and ECPA Class Members therefor did not consent to Defendant's interception and recording.

229.   Defendant intentionally intercepted the content of these text messages.

230.   Defendant used an electronic device

231.   Accordingly, Defendant violated 18 U.S.C. § 2511(1)(a)

232.   Plaintiffs and ECPA Class Members are entitled to $10,000 for each wrongfully intercepted and read text message pursuant to 18 U.S.C. § 2520(c)(2)(B).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Adler and Plaintiff McDonough, individually and on behalf of the Classes, prays for the following relief:

A.   An order certifying the Classes as defined above, appointing Plaintiffs Adler and McDonough as the representatives of the B Class, C Class, CIPA Class, and ECPA Class, and appointing their counsel as Class Counsel;

B.   An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. § 227(b) and (c); Cal. Penal Code §§ 631, 632, and 632.7; and 18 U.S.C. § 2511, *et seq.*

C.   An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.   An award of statutory damages for violations of 227(b) and (c); Cal. Penal Code §§ 631, 632, and 632.7; and 18 U.S.C. § 2511 *et seq.*

E.   An award of treble damages under § 227(b) and § 227(c);

F.   Such other and further relief permitted by the aforementioned statutes or that the Court deems reasonable and just.

**FIRST AMENDED CLASS ACTION COMPLAINT**

1

**JURY DEMAND**

2     Plaintiffs request a trial by jury of all claims that can be so tried.

3

4   Dated:  April 5, 2021                          **LIPPSMITH LLP**

5

6                                     By:   <u>/s/ *Graham B. LippSmith*</u>
                                           GRAHAM B. LIPPSMITH
7                                          MARYBETH LIPPSMITH
                                           JACLYN L. ANDERSON
8

9                                          **THE BRAD SOHN LAW FIRM, PLLC**
                                           BRAD SOHN
10

11                                         *Attorneys for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED CLASS ACTION COMPLAINT**

# CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. I am an employee of or agent for LippSmith LLP, whose business address is 555 South Flower Street, Suite 4400, Los Angeles, CA 90071.

I hereby certify that on April 5, 2021, I served the foregoing document, **FIRST AMENDED CLASS ACTION COMPLAINT** to the following parties in this action addressed as follows:

**MORRISON & FOERSTER LLP**
Tiffany Cheung
TCheung@mofo.com
425 Market Street
San Francisco, CA 94105

*Attorneys for Defendant Community.com, Inc.*

☑ (BY ELECTRONIC SERVICE) I caused the documents to be sent to the persons at their electronic notification addresses. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Executed on April 5, 2021 in Los Angeles, California. I declare under penalty of perjury under the laws of the United States that the above is true and correct.

_____
Niki B. Smith