TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
MICHAEL BURSHTEYN (CA SBN 295320)
MBurshteyn@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

NANCY R. THOMAS (CA SBN 236185)
NThomas@mofo.com
MIA N. AKERS (CA SBN 323571)
MAkers@mofo.com
Morrison & Foerster LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Defendant
COMMUNITY.COM, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN ADLER AND GAVIN MCDONOUGH, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMMUNITY.COM, INC.,<br><br>Defendant. | Case No. 2:21-cv-02416-SB-JPR<br><br>**DEFENDANT COMMUNITY.COM, INC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing: July 30, 2021<br>Time: 8:30 a.m.<br>Court: 6C<br>Judge: Stanley Blumenfeld, Jr.<br><br>Complaint filed: March 18, 2021<br>Am Compl. filed: April 5, 2021 |

COMMUNITY.COM, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

sf-4503162

1

# TABLE OF CONTENTS

2

**Page**

3  INTRODUCTION ........................................................................................ 1

4  FACTUAL BACKGROUND ...................................................................... 3

    A.    Community Platform ..................................................................... 3

5      B.    Plaintiffs' Allegations. .................................................................. 4

6            1.    TCPA Allegations. ............................................................. 5

7            2.    Wiretapping Allegations. .................................................. 6

   LEGAL STANDARD .................................................................................. 6

8  ARGUMENT ............................................................................................... 7

9  I.     THE COURT SHOULD DISMISS PLAINTIFFS' TCPA CLAIMS. .......... 7

10      A.    Plaintiffs Fail To State A Claim For Violation Of TCPA Section 277(b)(1)(A)(iii) Because They Do Not Allege That Community Uses An Autodialer. ...............................................

11

12      B.    Plaintiffs Do Not State A Claim Under TCPA Section 227(c) Because They Do Not Allege That the Texts Community Sent Were Solicitations To Purchase Or Invest in Anything. ..................... 10

13      C.    Plaintiffs' TCPA Section 227(c) Claim Also Fails Because of the Established Business Relationship Exemption. ........................... 12

14

15  II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER CIPA OR THE WIRETAP ACT. ..................................................................................... 13

16      A.    Community Is a Platform, Not an Eavesdropper or Surreptitious Recorder of Plaintiffs' Texts. .......................................................... 13

17      B.    Plaintiffs Fail to State A Claim Under CIPA Section 631 or the Wiretap Act for Additional Reasons. ............................................ 15

18            1.    Both Tom Brady and Community Were Parties to Plaintiffs' Texts. .............................................................. 16

19

20            2.    Community Did Not Access the "Contents" of Plaintiffs' Texts. ............................................................... 17

21            3.    Community Does Not Capture Text Messages In Transit or Intercept Them. .................................................. 18

22            4.    Plaintiffs Do Not Allege Community Uses a "Device" as Defined by the Wiretap Act. ......................................... 20

23      C.    Plaintiffs' CIPA Section 632 Claims Also Fail Because A Reasonable Person Would Not Expect Plaintiffs' Initial Texts Sent In Response to Tom Brady's Tweet Would be Confidential. .... 21

24

25      D.    Plaintiffs' CIPA Section 632 and 632.7 Claims Also Fail Because Plaintiffs Consented to Community's Involvement. ............ 22

26  CONCLUSION ............................................................................................ 23

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*10E, LLC v. Travelers Indem. Co.*,
   483 F. Supp. 3d 828 (C.D. Cal. 2020) .................................................................. 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................... 6, 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 6, 7

*Bradley v. Google, Inc.*,
   No. C 06-05289 WHA,
   2006 WL 3798134 (N.D. Cal. Dec. 22, 2006) .................................................. 20

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) .............................................................. 14

*Coulter v. Bank of Am. Nat'l Tr. & Savings Ass'n*,
   28 Cal. App. 4th 923 (1994) ............................................................................. 21

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) .............................................................................. 7

*Facebook, Inc. v. Duguid*,
   141 S. Ct. 1163 (2021) (*Duguid*).................................................................*passim*

*Faulkner v. ADT Sec. Servs., Inc.*,
   No. C 11-00968 JSW,
   2011 WL 1812744 (N.D. Cal. May 12, 2011) ................................................... 21

*Flanagan v. Flanagan*,
   27 Cal. 4th 766 (2002) ...................................................................................... 21

*Forney v. Hair Club for Men Ltd.*,
   No. CV 16-9640-R,
   2017 WL 4685549 (C.D. Cal. June 26, 2017)................................................... 13

*Garcia v. Enter. Holdings, Inc.*,
   78 F. Supp. 3d 1125 (N.D. Cal. 2015)................................................................. 3

ii

*Graham v. Noom, Inc.*,
   No. 20-cv-06903-LB,
   2021 WL 1312765 (N.D. Cal. Apr. 8, 2021) ................................................. 14, 15

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020), *cert. denied*, *Facebook, Inc. v. Davis*,
   No. 20-727, -- S. Ct. --, 2021 WL 107228 (Mar. 22, 2021) ................................ 16

*In re Google Assistant Privacy Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ..................................................... 21

*In re Google Inc. Gmail Litig.*,
   No. 13-MD-02430, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ................... 21

*In re Rules & Regulations Implementing the Telephone Consumer
   Protection Act of 1991*,
   18 FCC Rcd. 14014 (2003) .................................................................. 12

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ........................................................... 17, 18

*Johnson v. Experian Info. Sols., Inc.*,
   No. 2:18-cv-114-JAM-EFB PS,
   2019 WL 951425 (E.D. Cal. Feb. 27, 2019)  ............................................. 10

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................. 3

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ............................................................... 3

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002) ............................................................... 18

*McEwen v. Nat'l Rifle Ass'n of Am.*,
   No. 2:20-cv-00153-LEW,
   2021 WL 1414273 (D. Me. Apr. 14, 2021) .......................................... 8, 10

*Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
   No. 12-CV-01685-BAS(JLB),
   2016 WL 4886933 (S.D. Cal. Sept. 15, 2016) ...................................... 22

iii

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008),
    *aff'd*, 322 F. App'x 489 (9th Cir. 2009) ............................................................ 7

*People v. Ratekin*,
    212 Cal. App. 3d 1165 (1989) ............................................................ 17

*People v. Wilson*,
    17 Cal.App.3d 598 (1971) ............................................................ 20

*Powell v. Union Pac. R.R. Co.*,
    864 F. Supp. 2d 949 (E.D. Cal. 2012) ............................................................ 16

*Ramirez v. Manpower, Inc.*,
    No. 5:13-CV-2880-EJD,
    2014 WL 116531 (N.D. Cal. Jan. 13, 2014) ............................................................ 15

*Rogers v. Ulrich*,
    52 Cal. App. 3d 894 (1975) ............................................................ 16

*Rosenow v. Facebook, Inc.*,
    No. 19-cv-1297-WGH-MOD,
    2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ............................................................ 18

*Suttles v. Facebook, Inc.*,
    461 F. Supp. 3d 479 (W.D. Tex. 2020) ............................................................ 11

*Svenson v. Google Inc.*,
    65 F. Supp. 3d 717 (N.D. Cal. 2014) ............................................................ 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................ 3

*Underhill v. Kornblum*,
    No. 16–CV–1598–AJB–WVG,
    2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) ............................................................ 14

*United States v. Reed*,
    575 F.3 900, 917 (9th Cir. 2009) ............................................................ 17

*Wolfkiel v. Intersections Ins. Servs. Inc.*,
    303 F.R.D. 287 (N.D. Ill. 2014) ............................................................ 13

iv

*Yale v. Clicktale, Inc.*,
   No. 20-cv-07575-LB,
   2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) .................................................. 14

**Statutes, Rules, & Regulations**

18 U.S.C.
   § 2510(4).................................................................................................... 20
   § 2510(5)(a)(ii)........................................................................................... 20
   § 2510(15).................................................................................................. 20
   § 2511 ......................................................................................................... 2
   § 2511(1)(a) ............................................................................ vii, 13-14, 18
   § 2511(2)(d) .............................................................................................. 16

47 U.S.C.
   § 227(a)(1) ................................................................................................... 7
   § 227(b)(1)(A)(iii) ....................................................................................... 7
   § 227(c) ........................................................................................... 10, 12, 13

Cal. Pen. Code
   § 631 ..................................................................................................*passim*
   § 631(a) ................................................................... vii, 2, 13, 17, 18
   § 632 ........................................................................ vii, 2, 13, 21, 22
   § 632(a) ...................................................................................................... 14
   § 632.7 ...................................................................... vii, 2, 13, 22
   § 632.7(a) ................................................................................................... 14

Fed. R. Civ. P.
   Rule 8............................................................................................................ 6
   Rule 12(b)(6) .......................................................................................... vii, 7

47 C.F.R.
   § 64.1200 .................................................................................................... 10
   § 64.1200(c) ............................................................................................... 10
   § 64.1200(c)(2) .......................................................................................... 10
   § 64.1200(f)(5) ........................................................................................... 12
   § 64.1200(f)(14) ......................................................................................... 12
   § 64.1200(f)(15) ......................................................................................... 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

Please take notice that on July 30, 2021 at 8:30 a.m., or as soon thereafter as the matter may be heard, Defendant Community.com, Inc. ("Community") shall, and hereby does move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for the entry of an order dismissing Plaintiffs Shawn Adler and Gavin McDonough's First Amended Complaint (FAC) against Community in this action on the grounds that these causes of action fail to state a claim for which relief may be granted for violations of the Telephone Consumer Protection Act (TCPA), California Invasion of Privacy Act (CIPA), California Penal Code §§ 631(a), 632, and 632.7, and the federal Wiretap Act, as amended by the Electronic Communications Privacy Act (the Wiretap Act), 18 U.S.C. § 2511(1)(a). The hearing on the motion will be held in the courtroom of the Honorable Stanley Blumenfeld, Jr., Courtroom No. 6C, United States District Court, Central District of California, 350 W. 1st Street, Los Angeles, California 90012.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities in support thereof; the pleadings and other records in the Court's file; and such other written and oral argument as may be presented to the Court.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on June 1, 2021.

Dated: June 8, 2021

MORRISON & FOERSTER LLP

By: _____/s/ Tiffany Cheung_____

Attorneys for Defendant
COMMUNITY.COM, INC.

# **INTRODUCTION**

Community is a messaging platform that allows individuals and companies to communicate with their fans, followers, and customers.  This innovative platform allows users, known as Community Leaders, to communicate with select groups of individuals, known as Community Members.  Celebrities like Tom Brady, organizations like the National Football League, and companies like White Claw sign up with Community as Community Leaders, and they are assigned a Community number.  Community Leaders independently determine how they will distribute their Community numbers to their fans and audience using methods outside the Community platform.  For example, Community Leaders may distribute their number through social channels such as Instagram, or through various other types of communications, including television interviews.  Individuals who choose to send a text to that Community Leader's number to message with the Community Leader will trigger a response from the Community Leader, along with a link to sign up with Community.

Plaintiffs allege they saw a tweet from Tom Brady announcing a "tool that will allow [him] to communicate more directly with [his] fans and [his] followers where we can actually do a better job of responding to [fans] and [their] questions and all the great messages."  Plaintiffs admit they sent a text inquiry to the number listed in the tweet and allege they received automated text messages in response.  They claimed in the original complaint that these text messages violated the TCPA, even though they admit they proactively sent a text about Tom Brady's new messaging "tool" and received a response via that tool, as a reasonable person would expect.

Then the Supreme Court issued its ruling in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021) (*Duguid*).  The Supreme Court's ruling defeats Plaintiffs' TCPA autodialer claim because equipment that sends "targeted, individualized" texts to

COMMUNITY.COM, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

specific phone numbers—like the texts sent in direct response to the initial texts Plaintiffs sent—does not constitute an automated telephone dialing system ("ATDS" or "autodialer").

So Plaintiffs went back to the drawing board.  They added allegations on "information and belief" to attempt to grasp onto a passing reference in a footnote in the *Facebook* decision.  Those allegations, though, are merely conclusory allegations made on information and belief that have nothing to do with Plaintiffs.  Instead, these conclusory allegations concern how Community Leaders can communicate with their Members.  Plaintiffs contend they never became Members, so these allegations cannot save their claim.

Plaintiffs' TCPA claim based on the Do-Not-Call registry also fails because that provision applies only to telemarketing that encourages purchase or investment in goods and services.  Plaintiffs do not allege the challenged texts had any such purpose.  Indeed, it is clear from the face of the texts that they contained no marketing of any good or service for sale to Plaintiffs.

Likely recognizing the fatal defect introduced by *Duguid*, Plaintiffs added claims for alleged illegal "wiretapping" under California and federal law.  But Community is a platform—part of the infrastructure that sends messages from the sender to the recipient.  Plaintiff has not and cannot allege any facts indicating Community illegally "intercepts," "listens to," or "records" the "contents" of the text messages, much less while these messages are "in flight."  Plaintiffs' affirmative requests to initiate communications through the "tool" used by Tom Brady likewise defeat Plaintiffs' "wiretapping" claims. Accordingly, their claims for violation of the California Invasion of Privacy Act (CIPA), California Penal Code sections 631, 632, and 632.7, and for violation of the Wiretap Act, as amended by the Electronic Communications Privacy Act (the Wiretap Act), 18 U.S.C. section 2511, should be dismissed as well.

# **FACTUAL BACKGROUND**

## A.    **Community Platform.**

Community has been described as a "first-of-its-kind conversation platform—enabling direct, meaningful and instant communication." (FAC ¶ 53.) As the Community website and press articles alleged in the FAC indicate, Community allows celebrities and companies to connect with their fans and audience.[1]   Community's platform functions as a "communications channel that connects [Community] Leaders—global pop culture icons, local community organizers, small business owners, media companies, and brands—to their [Community] Members."[2]

Community Leaders sign up with Community and are assigned a Community number.  Community Leaders then independently determine how and when to distribute that number to communicate with their followers.[3]  For example, as Plaintiffs allege, Community Leader Ellen DeGeneres sent the following tweet to announce her use of Community's platform on November 1, 2019: "It's true – now you can text me.  Here's my Community number.  This is gonna be fun.  310-455-8858." (First Am. Compl. (FAC) ¶ 136, ECF No. 14.)

Individuals who want to communicate with the Community Leader can send

---

[1] "[C]ourts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  The incorporation-by-reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken — or doom — their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (applying incorporation by reference doctrine to website pages); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136–37 (N.D. Cal. 2015).

[2] *Why Community?*, https://community.com/why-community (last visited June 8, 2021).

[3] *General FAQ: How Does it Work*, https://community.com/help (last visited June 8, 2021) ("A Community Leader receives their own 10-digit phone number. They can promote the number by posting on social platforms, sending an email, or simply providing it to those who want to join their Community.").

a text to the Community number identified in the announcement.  (FAC ¶¶ 41-44, 88-90.)  The individual immediately receives a direct response to his or her request: a customized message provided by the Community Leader, along with a link to confirm sign up for that Leader's community via Community's platform.  (*Id*.; *see also General FAQ: How Does it Work*, https://community.com/help  (last visited June 8, 2021) ("When a Member texts in for the first time, they receive a customized message and a link from the Leader, prompting them to enter their contact info and opt-in to the Leader's Community by saving their contact info.").)  Individuals who complete the sign up and agree to Community's terms of service can communicate with the Community Leader through the platform.[4]

Although overly simplistic, the FAC's analogy to Facebook is relevant in one respect:  Community serves only as a platform in providing the infrastructure to allow for communication between a Community Leader and Members of that Community.  (FAC ¶ 59.)

**B.    Plaintiffs' Allegations.**

Plaintiffs allege that Tom Brady tweeted "Trying something new here . . . Hit me up at (415) 612-1737.  Rule #1 . . . no texting on Gamedays."  (FAC ¶ 39.) "Accompanying this [message] was a video in which Brady begins:

> Hey what's up everyone?  So this is a real first for me,
> but I've been talked into giving out my cell phone on the
> internet. So, listen rule #1 before we get into any of this:
> no texting on gamedays.  Really though, what this is is
> it's a tool that will allow me to communicate more
> directly with my fans and my followers where we can
> actually do a better job of responding to you and your

---

[4] *Member FAQ Is this a scam? I bet it's just a chatbot . . .*, https://community.com/help ("Behind every Community number is a real Leader sending and responding to messages.").

questions and all the great messages."

(*Id*. ¶ 40.)  Plaintiffs Adler and McDonough admit that they each sent an inbound text message to Tom Brady's Community number at (415) 612-1737 and allege that they both received a direct response.  (*Id*. ¶ 88-90, 102-04.)  They further allege that Community's response to their and others' inbound texts are "immediate":  "[t]he same process—text, receive back a link to sign up for Defendant's service, and an immediate follow up 'from' the celebrity—occurs with every celebrity[.]"  (*Id*. ¶ 56.)  Plaintiffs allege they did not complete the Community "sign[] up" process.  (*Id*. ¶ 120.)  Other than the single text response received in response to Plaintiffs' requests, Plaintiffs do not allege they received any other texts from Community.

### 1.    TCPA Allegations.

Plaintiffs admit that they received the text messages at issue only *after* they sent inbound texts to the Community number in Tom Brady's tweet and that they received these text responses "immediately."  (FAC ¶¶ 41-44, 56, 89-90, 103-04.)  After the Supreme Court issued its landmark decision in *Duguid*, which significantly narrowed the definition of ATDS, Plaintiffs amended their complaint, adding allegations on "information and belief" about how Community supposedly stores numbers in a database.  Specifically, Plaintiffs allege that rather than sending the two texts in the order in which they are received, it "crawls that database to produce numbers to be called or sent messages based on a variety of parameters."  (*Id*. ¶¶ 65-86.)  But this theory contradicts Plaintiffs' admissions that the texts at issue were received "immediately" after Plaintiffs themselves sent the initial requests (*id*. ¶ 56)—demonstrating that the challenged texts were indeed sent in the order in which requests were received.

Moreover, the only facts included in these new allegations have nothing to do with the text responses sent to Plaintiffs, who did not complete the "sign up" process for Community.  Instead, these new allegations relate to Community Leaders' alleged ability to target communications to particular Community

Members, such as based on the Members' location, gender, or age.  (FAC ¶ 75.)
Plaintiffs do not allege they received any such targeted communications.  Nor could
they, because they allege these messages are sent to Community Members, whom
Plaintiffs admit have agreed to Community's Terms of Service.  (*Id*. ¶ 120
(recognizing that Community Members must agree to Community's terms and
privacy policy).)[5]  Plaintiffs allege that they never became Community Members,
so these allegations made on information and belief have nothing to do with the
only texts they allege they received—signup texts sent in response to their own
requests to communicate with Tom Brady.

### 2. Wiretapping Allegations.

After *Duguid* reversed the Ninth Circuit authority on which Plaintiffs based
their initial TCPA autodialer claim, Plaintiffs amended their Complaint to assert
tortured claims that Community: a) "wiretapped" and "intercepted" the text
messages Plaintiffs sent to Tom Brady's Community number; b) that they
reasonably believed that texts sent in response to a message Tom Brady tweeted to
his 1.9 million followers were confidential and private;[6] and c) that Community
"eavesdropped" and "recorded" those communications without their consent.  (FAC
¶¶ 146, 151, 152, 157.)  These allegations are fatally flawed, as explained below.

### LEGAL STANDARD

A court should dismiss a complaint that fails to plead facts establishing a
claim to relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[L]abels
and conclusions" or "a formulaic recitation of the elements" do not suffice.  *Iqbal*,
556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  To satisfy Rule 8, the

---

[5] *See also* Terms of Service, 4. Terms for Community Members,
https://www.community.com/terms#S4 (last updated Mar. 8, 2021).

[6] FAC ¶ 40; https://twitter.com/TomBrady (indicating Tom Brady has 1.9M
followers) (last visited June 8, 2021).

complaint must "nudge[] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  The court need not accept as true conclusory allegations, legal characterizations, unreasonable inferences, or unwarranted fact deductions.  *Iqbal*, 556 U.S. at 680-81 (conclusory allegations are not entitled to the presumption of truth); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009).

"Although '[a]s a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion,' a court can consider extrinsic material when its 'authenticity . . . is not contested and the plaintiff's complaint necessarily relies on them.'"  *10E, LLC v. Travelers Indem. Co.*, 483 F. Supp. 3d 828, 835 (C.D. Cal. 2020) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).  The court need not accept allegations contradicted by documents incorporated by reference.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## ARGUMENT

### I.   THE COURT SHOULD DISMISS PLAINTIFFS' TCPA CLAIMS.

#### A.   Plaintiffs Fail To State A Claim For Violation Of TCPA Section 277(b)(1)(A)(iii) Because They Do Not Allege That Community Uses An Autodialer.

Plaintiffs' allegation that they received the challenged texts from Community in direct response to their inbound texts defeats their TCPA claim.  Specifically, they have not and cannot allege that Community sent the texts using an ATDS, an essential element of a TCPA claim.  47 U.S.C. § 227(b)(1)(A)(iii).

The TCPA defines an ATDS as "equipment which has the capacity—

(A)   to store or produce telephone numbers to be called, using a random or sequential number generator; and

(B)   to dial such numbers."

47 U.S.C. § 227(a)(1).  A few weeks after Plaintiffs filed their original complaint, the United States Supreme Court reversed the Ninth Circuit and ruled that

equipment that sends "targeted individualized" texts to "numbers linked to specific accounts" does not constitute an ATDS. *Duguid*, 141 S. Ct. at 1167-68. Rather, to constitute an autodialer, the equipment must "in all cases, whether storing or producing numbers to be called," "use a random or sequential number generator." *Id.* at 1170.

*Duguid* addressed Facebook's "login notification system," which allows users to elect to receive text messages when someone attempts to access their account from an unknown device. Facebook did not send texts to numbers that were randomly or sequentially generated. Rather, Facebook sent texts to specific numbers linked to users' accounts. *Id*. The Supreme Court held that Facebook did not use an autodialer, rejecting the Ninth Circuit's contrary holding because "[e]xpanding the definition of an autodialer to encompass any equipment that merely stores and dials telephone numbers would take a chainsaw to these nuanced problems when Congress meant to use a scalpel, . . . [and] capture virtually all modern cell phones[.]" *Id.* at 1171.

This Court should dismiss Plaintiffs' TCPA claims based on this new, significantly narrowed definition. For example, in *McEwen v. Nat'l Rifle Ass'n of Am.*, No. 2:20-cv-00153-LEW, 2021 WL 1414273, at *7 (D. Me. Apr. 14, 2021), the district court explained "[a]fter the *Duguid* opinion, the ATDS portion of the claim requires an allegation that [defendant] used a random or sequential number generator to place a call to [the plaintiff's] cellphone, not merely a claim that its dialing system has that capability." The court dismissed the complaint because the complaint did not include any such allegations. *Id*.

Here too, Plaintiffs allege that they received the challenged texts in response to their sending inbound texts to Tom Brady's Community number. (FAC ¶¶ 41-44, 56, 89-90, 103-04.) The FAC contains screenshots confirming that the challenged texts were sent in direct response to inbound messages from Plaintiffs' specific phone numbers. (*Id*. ¶ 55.) And Plaintiffs allege repeatedly that

8

Community responds "immediately," indicating again that the texts are sent to the phone numbers associated with the inbound texts sent by Plaintiffs themselves.  (*Id*. ¶ 56.)  There was nothing sequential or random about it.  *Duguid* is therefore dispositive of their TCPA claim.

A few days after the Supreme Court issued its *Duguid* decision, Plaintiffs amended their complaint in a blatant, but unsuccessful, attempt to plead around the ruling.  These allegations seem to be based on a footnote in the decision:  "For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list."  *Duguid*, 141 S. Ct. at 1172 n.7.

Plaintiffs' allegations mimic the hypothetical in the footnote without stating any facts:  "[u]pon information and belief, Defendant's system operates by storing numbers in a database, but then, rather than dialing numbers directly from that database, it sequentially crawls that database to produce numbers to be called or sent messages based on a variety of parameters."  (FAC ¶ 65.)

But Plaintiffs' own allegations undermine their new, speculative (and inaccurate) theory.  Plaintiffs admit that the texts at issue were received "immediately" after they sent their own texts to Tom Brady's Community number, indicating that the challenged texts were sent in direct response to their requests, rather than resulting from crawling a database or any specific search parameters.  Moreover, the only facts alleged to support this hypothetical method by which the Community system allegedly operates concern identifying numbers based on parameters such as location, gender, and age—ways in which Community Leaders can send messages to particular sub-sets of their Community Members, and how Community Members can opt out of receiving messages from Community Leaders (FAC ¶¶ 75, 81-83.)

Even if these allegations were sufficient to allege that Community is using an ATDS (which they are not), these allegations have nothing to do with the texts

Plaintiffs challenge, which were sent in direct response to Plaintiffs' own requests to Tom Brady's Community number.  Plaintiffs do not and cannot allege that they received the challenged texts based on specific search parameters applied to Community Members.  (FAC ¶¶ 55-56 (texts included link to sign up as Community Member).)  Indeed, Plaintiffs allege they are not Community Members, so these allegations cannot save Plaintiffs' defective TCPA claim.  *See McEwen*, 2021 WL 1414273, at *7 (granting motion to dismiss where plaintiff failed to allege texts they challenged were sent using a random or sequential number generator); *Johnson v. Experian Info. Sols., Inc.*, No. 2:18-cv-114-JAM-EFB PS, 2019 WL 951425, at *2 (E.D. Cal. Feb. 27, 2019) ("[A] plaintiff cannot avoid dismissal for failure to state a claim 'simply by slapping the 'information and belief' label onto speculative or conclusory allegations.'" (citation omitted)).

**B.      Plaintiffs Do Not State A Claim Under TCPA Section 227(c) Because They Do Not Allege That the Texts Community Sent Were Solicitations to Purchase Or Invest in Anything.**

Plaintiffs' own allegations that they proactively sent Tom Brady a text message seeking to communicate with him, and the nature of the texts they received in response, defeat their claim that Community initiated text solicitations to them. (FAC ¶¶ 88-90, 102-04.)

Plaintiffs allege a violation of TCPA section 227(c), which gives the FCC authority to regulate "telemarketing calls" to protect subscriber's rights "to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c). Pursuant to this authority, the FCC issued 47 C.F.R. section 64.1200 which created the national Do-Not-Call Registry.

Plaintiffs allege the challenged text messages "violate 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c)." (FAC ¶¶ 99, 113.)  Section 64.1200(c)(2) provides, in relevant part:  "(c) No person or entity shall initiate any **telephone solicitation**" to a telephone subscriber who has registered his or her phone number on the national Do-Not-Call registry.  47 C.F.R. § 64.1200(c)(2) (emphasis added).

10

The definition of telephone solicitation defeats Plaintiffs' claims:

> The term ***telephone solicitation*** means the initiation of a telephone call or message for the purpose of ***encouraging the purchase or rental of, or investment in,*** property, goods, or services, which is transmitted to any person, but such term does not include a call or message . . . (ii) [t]o any person with whom the caller has an established business relationship[.]

47 C.F.R. § 64.1200(f)(15) (emphasis added).  Although Plaintiffs assert repeatedly that the challenged texts were "telemarketing messages" or "telemarketing text messages" or "telephone solicitations" (*e.g.* FAC ¶¶ 42, 44, 89-91, 98, 104-05, 112), Plaintiffs do not allege any facts showing those texts encouraged them to purchase, rent, or invest in property, goods, or services.  In fact, they allege just the opposite—that it is the Community Leaders who pay Community for its services and that the texts contained a link to sign up for Community.com and a message from Tom Brady.  (FAC ¶¶ 43-44, 50, 60 (alleging signing up would have been free for Plaintiffs).)  The texts themselves demonstrate that they offer *nothing* for sale and certainly do not encourage the text recipient to purchase or rent any property, goods, or services.  As Plaintiffs allege:  The "first message contains a link to Defendant's community.com service which, when clicked, requires the texting party to sign up for Defendant's service to proceed further."  Second, the sender of the text receives a message from the celebrity "encouraging [the text sender] to click the link."  (FAC ¶¶ 44-45.)

Plaintiffs, then, have not alleged that Community sent them any "telephone solicitation," so their TCPA claim based on the Do-Not-Call registry does not state a claim and should be dismissed.  *See*, *e.g.*, *Suttles v. Facebook, Inc.*, 461 F. Supp. 3d 479, 482-84 (W.D. Tex. 2020) (dismissing Do-Not-Call TCPA claims because invitations to visit Facebook "so Facebook can earn more ad space" did not "encourage [plaintiff] to purchase anything" and instead "help[ed] the company

11

engage in commercial transactions with *others* who might purchase advertisements on the website's platform).

### C.    Plaintiffs' TCPA Section 227(c) Claim Also Fails Because of the Established Business Relationship Exemption.

Even if Plaintiffs could get over the solicitation hurdle, their claim would still fail because their affirmative outreach to Tom Brady created an established business relationship, so texts sent to them by or on behalf of Tom Brady are excluded from the definition of telephone solicitation under 47 C.F.R. § 64.1200(f)(14).  The regulations define an "established business relationship" as:

> [A] prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of . . . the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call.

47 C.F.R. § 64.1200(f)(5).  Here, Plaintiffs admit that they saw a tweet from Tom Brady and responded to the number stated in the tweet—a voluntary two-way communication, and that they received texts from Community immediately after sending their request (i.e. within three months of their inquiry).  The FCC has made clear that third parties may call on behalf of a direct party in the relationship.  *See, e.g.*, *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14083 ¶ 118 (2003) ("We recognize that companies often hire third party telemarketers to market [the seller's] services and products.  In general, those telemarketers may rely on the seller's EBR [Established Business Relationship] to call an individual consumer to market the seller's services and products.").

Accordingly, Tom Brady, on his own or through Community, was entitled to send the text messages at issue to Plaintiffs because Plaintiffs' inbound texts

1  created an established business relationship.  As such, Plaintiffs have not pled a

2  viable claim for violation of TCPA section 227(c) for this independent reason.  *See,*

3  *e.g.*, *Forney v. Hair Club for Men Ltd.*, No. CV 16-9640-R, 2017 WL 4685549, at

4  *3 (C.D. Cal. June 26, 2017) (dismissing § 227(c) claim where allegations about

5  the absence of an established business relationship were speculative and

6  inconsistent with others in the pleadings); *Wolfkiel v. Intersections Ins. Servs. Inc.*,

7  303 F.R.D. 287, 291–92 (N.D. Ill. 2014) (dismissing Do-Not-Call TCPA claim

8  against company that made calls on behalf of a lender with whom plaintiff had an

9  established business relationship).

10  **II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER CIPA OR THE**

11  **WIRETAP ACT.**

12         Community's role as a platform that allows communication between

13  Plaintiffs and a Community Leader defeats Plaintiffs' wiretapping and recording

14  claims under state and federal law.

15         **A.    Community Is a Platform, Not an Eavesdropper or Surreptitious**

16  **Recorder of Plaintiffs' Texts.**

17         Plaintiffs' attempt to analogize the Community platform to illegal

18  wiretapping and recording fails on its face.  Plaintiffs' attempts to allege

19  "wiretapping" claims under CIPA sections 631, 632, and 632.7 and Wiretap Act

20  section 2511(1)(a) all fail.

21         •  To establish a claim under CIPA section 631, Plaintiffs must show that

22            Community  "read[], or attempt[] to read, or to learn the contents or

23            meaning of any message, report, or communication" only "while the

               same is in transit."  Cal. Pen. Code § 631(a).

24         •  Under the Wiretap Act section 2511(1)(a), Plaintiffs must adequately

25            allege that Community "intentionally intercepts, endeavors to

26            intercept, or procures any other person to intercept or endeavor to

               intercept, any wire, oral, or electronic communication." 18 U.S.C.

27

28

13

sf-4503162

§2511(1)(a).[7]

- To state a claim under CIPA section 632(a), Plaintiffs must plead that Community used a "recording device to eavesdrop upon or record [] confidential communication[s]."  Cal. Pen. Code § 632(a).

- Under CIPA section 632.7(a), Plaintiffs must adequately allege that Community "without the consent of all parties to a communication, intercepts or receives and intentionally records" communications involving at least one cell or cordless phone.  Cal. Pen. Code § 632.7(a). ).

Plaintiffs cannot state a claim under any of these provisions because Community is a platform facilitating communications; it does not read or learn the contents, eavesdrop, intercept, or record confidential communications as required by CIPA.  *See, e.g.*, *Graham v. Noom, Inc.*, No. 20-cv-06903-LB, 2021 WL 1312765, at *5 (N.D. Cal. Apr. 8, 2021) (dismissing CIPA claims against software company that was a technology platform evaluating website use for website owner); *Yale v. Clicktale, Inc.*, No. 20-cv-07575-LB, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) ("[F]or the reasons stated in *Noom*, [defendant] Clicktale is not a third-party eavesdropper.  It is a vendor that provides a software service that allows its clients to monitor their website traffic.").

For example, in *Graham*, defendant Noom used co-defendant FullStory as a software service provider to capture analytics about users' experiences and other data on its website (diet offerings) and host it on FullStory's servers for clients, like Noom, to analyze.  2021 WL 1312765, at *1, *5.  Plaintiffs alleged that FullStory constituted a third-party eavesdropper due to its software-as-a-service analytics

---

[7] "[A]nalysis for a violation of CIPA [section 631] is the same as that under the federal Wiretap Act." *Underhill v. Kornblum*, No. 16–CV–1598–AJB–WVG, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (analysis of communication's "contents" is the same under both statutes).  Community accordingly cites cases analyzing both CIPA section 631 and the Wiretap Act.

14

product and violated CIPA § 631.  *Id.* at *2.  But because FullStory was acting at Noom's direction to provide website analytics, it was "an extension of Noom," so the court dismissed plaintiff's CIPA claim because there were no allegations that "FullStory intercepted and used the data itself."  *Id.* at *5.

Here, as in *Graham*, Community allows its customers—Community Leaders—to reach their customers and followers through text messaging to build "a more personal connection than possible on social platforms or via email."[8] Plaintiffs do not and cannot allege that Community used the texts they sent to do anything other than facilitate communications with Tom Brady.

Plaintiffs' conclusory allegations parroting the statutory language that Community "intercepted, recorded, and scanned" and "read or attempt[ed] to read or learn" the contents of messages between Plaintiffs and Tom Brady, without their consent are plainly insufficient to state a claim.  (FAC ¶¶ 117, 119, 121, 147.)  *See, e.g.*, *Ramirez v. Manpower, Inc.*, No. 5:13-CV-2880-EJD, 2014 WL 116531, at *5 (N.D. Cal. Jan. 13, 2014) (dismissing claim based on violation of a statute because "Plaintiff merely parrots the language of the statute … and falls short of providing any factual content that allows the Court to draw the reasonable inference that Defendants are liable for the misconduct alleged").  Accordingly, Plaintiffs' CIPA and Wiretap Act claims should be dismissed.

### B.    Plaintiffs Fail to State A Claim Under CIPA Section 631 or the Wiretap Act for Additional Reasons.

Plaintiffs' section 631 CIPA claim and Wiretap Act claims fail for three independent reasons:  (1) Community and Tom Brady were both parties to the communications; (2) Plaintiffs do not plead any facts supporting their assertion that

---

[8] *See General FAQ: What is Community?*, https://community.com/help (last visited June 8, 2021), from the same website where Plaintiff obtained Community's privacy policy: "[U]se our powerful *platform* to reach your Community, either individually or collectively." (Emphasis added).

1  Community collected the "contents" of their communications as defined by CIPA;
2  and (3) Plaintiffs do not plead any facts supporting their assertion that Community
3  collected their communications "in transit" as defined by CIPA.  In addition, the
4  Wiretap Act claim fails because they have not identified any "device" as defined by
5  the Act.

### 1.   Both Tom Brady and Community Were Parties to Plaintiffs' Texts.

8  Both CIPA section 631 and the Wiretap Act contain "exemption[s] from
9  liability for a person who is a 'party' to the communication." *In re Facebook, Inc.*
10  *Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020), *cert. denied*, *Facebook,*
11  *Inc. v. Davis*, No. 20-727, -- S. Ct. --, 2021 WL 107228 (Mar. 22, 2021); *Powell v.*
12  *Union Pac. R.R. Co.*, 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012) ("Published cases
13  are in accord that section 631 applies only to third parties and not participants.");
14  *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (section 631 was intended to
15  address "eavesdropping," which is defined as "to listen secretly to what is said in
16  private," and "only a third party can listen secretly to a private conversation").
17  Consent by one party to the communication is fatal to a wiretap claim.  *See* 18
18  U.S.C. § 2511(2)(d) ("It shall not be unlawful . . . for a person . . .  to intercept a
19  wire, oral, or electronic communication where such person is a party to the
20  communication or where one of the parties to the communication has given prior
21  consent to such interception.").

22  Here, Community provides Tom Brady with the ability to connect with his
23  fans.  (FAC ¶¶ 39-40.)  Tom Brady voluntarily and intentionally signed up as a
24  Community Leader and the purpose of Community is to provide him a way to
25  communicate with Plaintiffs and other fans and followers.  (*Id*. ¶¶ 45-48.)  Plaintiffs
26  do not allege that Community acted independently of Tom Brady or acted without
27  his authorization in providing a way for him to send out communications to and
28  interact with his fans and followers.  Nor do Plaintiffs allege that Community

16

1   shared this information with anyone other than Tom Brady.[9]

2     Accordingly, because Plaintiffs admit that they sent a text to the number

3   announced by Tom Brady, both Tom Brady and Community, acting on Tom

4   Brady's behalf, were parties to Plaintiffs' alleged communications.  Thus, no CIPA

5   "wiretapping" — i.e., "intercepting communications by an *unauthorized connection*

6   to the transmission line" — occurred here.  *See People v. Ratekin*, 212 Cal. App. 3d

7   1165, 1168 (1989) (first emphasis added).  There can be no "unauthorized"

8   connection when Community was intentionally included in the communication by

9   Tom Brady.

10      **2. Community Did Not Access the "Contents" of Plaintiffs'**
11         **Texts.**

12     Plaintiffs' CIPA section 631 claim fails for the additional reason that they do

13   not allege any facts indicating Community accessed the content of their text

14   messages to Tom Brady.  Section 631 prohibits only the "unauthorized access of

15   the 'contents' of any communication."  Cal. Penal Code § 631(a).  The term

16   "contents" refers to the "the intended message conveyed by the communication."

17   *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014).  The "contents" do

18   not include "record information regarding the characteristics of the message that is

19   generated in the course of the communication," such as the email, URL, and IP

20   addresses or other basic identification and address information.  *Id*. at 1106; *see*

21   *also United States v. Reed*, 575 F.3 900, 917 (9th Cir. 2009).

22     Here, the FAC contains conclusory allegations that Community "scanned" or

23   "read" the content of the texts.  (FAC ¶¶ 117, 159.)  But Plaintiff acknowledges that

24   the only action by Community after they sent the texts was the sending of text

25   messages to their cell phones.  (*Id*. ¶¶ 88-90, 102-104.)  They do not allege any

26   _____

27     [9] Although Plaintiffs assert that Community somehow hides its involvement,
those allegations are all tied to messages sent by Community Leaders, not
28   Community.  (FAC ¶¶ 120-40.)

sf-4503162

facts supporting their assertion that Community read the contents of their texts, and their cell phone numbers are nonactionable "record information," *i.e.* "information regarding the characteristics of the message" rather than the "intended message conveyed by the communication." *See In re Zynga Privacy Litig.*, 750 F.3d at 1106-09 (user's Facebook ID and the address of the webpage from which the user's request to view another webpage was sent "does not constitute the contents of a communication" nor do email and IP addresses); *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 721, 729 (N.D. Cal. 2014) (contact information provided to Google while signing up for Google Wallet service, including names, email address, Google account name,  home city and state, ZIP code, and in some instances telephone number, is record information).[10]

### 3.    Community Does Not Capture Text Messages In Transit or Intercept Them.

CIPA section 631 and the Wiretap Act section 2511(1)(a) both require that the communication is captured "in transit" or intercepted contemporaneous with transmission.  Cal. Penal Code § 631(a); 18 U.S.C. § 2511(1)(a).  For a communication "to be 'intercepted' . . . it must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).  The communication must be "stop[ped], seize[d], or interrupt[ed] in progress or course before arrival." *Id.* (quoting *Webster's Ninth New Collegiate Dictionary* 630 (1985)).  Reading or acquiring the contents of a communication either *before* or *after* that communication is transmitted does not qualify.  *See Rosenow v. Facebook, Inc.*, No. 19-cv-1297-WGH-MOD, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (granting motion to dismiss Wiretap Act claim where allegations that communications were intercepted "in transit" were "conclusory").

---

[10] The Stored Communications Act at issue in *Svenson* incorporates the Wiretap Act's definition of contents.  *See In re Zynga Privacy Litig.*, 750 F.3d at 1104.

sf-4503162

Plaintiffs conclusorily allege here that Community "read, or attempted to read, or attempted to learn the contents of the messages sent to its celebrity clients before those messages actually reached their celebrity clients (i.e. while in transit)." (FAC ¶ 148.)  But Plaintiffs' allegation ignores that a text message is sent to *a phone number*.  The text is no longer in transit when it arrives at the location where the text is stored, for example, Community's platform.  That Tom Brady may or may not look at the text as soon as it is received by his Community number does not mean the text was "intercepted" while "in transit."

As Plaintiffs acknowledge, it was receipt of their texts by Community that triggered the challenged texts back to them.  Community is the platform that hosts the texts; the landing spot for the texts.  (FAC ¶¶ 53, 59, 120, 126.)[11]  So Community is not intercepting the texts in transit.  Instead, Plaintiffs' texts were received by the platform, and then Community sent the challenged texts on Tom Brady's behalf in response.

This is no different than when someone sends an email to someone who has turned on an out-of-office message.  The email server receives the message, which triggers sending of the out-of-office message.  The same is true for Community.  Although Plaintiffs' FAC contains a conclusory allegation referring to Community as a "software application" that captures or records the communications (FAC ¶¶ 154, 170-71), their factual allegations contradict this assertion and instead make clear that Community does not somehow get in between them and Tom Brady.  Instead, Community is the platform that hosts the texts and makes them available to Tom Brady, much like an email server.  Plaintiffs' inbound texts must reach the number they texted in order to trigger the sending of the challenged text responses.

---

[11] *See also General FAQ: What is Community?*, https://www.community.com/help (last visited June 8, 2021) ("Community is a new conversation platform enabling instant and direct communication with the people you want to reach[.]").

Accordingly, Plaintiffs have not alleged facts supporting an allegation that Community "read or attempted to read or to learn the contents or meaning" of any communication "in transit" rather than after the texts arrived at the number texted. *Bradley v. Google, Inc*., No. C 06-05289 WHA, 2006 WL 3798134, at *6 (N.D. Cal. Dec. 22, 2006) (plaintiff failed to state a CIPA claim because "she [did] not allege[ ] that Google intercepted her communications," only that her stored emails were deleted from her account); *People v. Wilson*, 17 Cal.App.3d 598, 603 (1971) (holding that CIPA did not apply where information was obtained after and not "while" it was in transit or passing over a wire).

### 4.    Plaintiffs Do Not Allege Community Uses a "Device" as Defined by the Wiretap Act.

The "ordinary course of business exception" provides a further reason why Plaintiffs fail to state a Wiretap Act claim.  Interception under the Wiretap Act means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."  18 U.S.C. § 2510(4).  The Act exempts from the definition of "device" "any telephone or telegraph instrument, equipment or facility, or any component thereof . . . being used by a provider of wire or electronic communication service in the ordinary course of its business." *Id*. § 2510(5)(a)(ii).  In turn, the Act defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." *Id*. § 2510(15).

Here, Plaintiffs acknowledge that Community is a platform that allows Community Leaders to send and receive communications. (FAC ¶ 53.) Community, then, is an "electronic communication service," and it sent the texts to Plaintiffs in the ordinary course of its business.  Plaintiffs therefore have not pled the required interception under the federal Wiretap Act for this additional reason.

**C.   Plaintiffs' CIPA Section 632 Claims Also Fail Because A Reasonable Person Would Not Expect Plaintiffs' Initial Texts Sent In Response to Tom Brady's Tweet Would be Confidential.**

Plaintiffs have not pled facts indicating that they had the reasonable expectation of privacy required to support their CIPA section 632 claim.  Under that section, "a conversation is confidential if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 772–73 (2002).  A party's subjective intent is irrelevant and courts consider the surrounding circumstances of the communication.  *See Coulter v. Bank of Am. Nat'l Tr. & Savings Ass'n*, 28 Cal. App. 4th 923, 929 (1994); *Faulkner v. ADT Sec. Servs., Inc.*, No. C 11-00968 JSW, 2011 WL 1812744, at *3 (N.D. Cal. May 12, 2011) (collecting cases)).

Here, despite their allegations otherwise, the facts surrounding the challenged texts indicate no reasonable person would have believed he or she was communicating directly with Tom Brady.  Brady announced his new number in a tweet to his 1.9 million followers.  (FAC ¶ 40; https://twitter.com/TomBrady (indicating Tom Brady has 1.9M followers).)  He stated in the message that his number is a new "tool" that will allow "we" (i.e. his team) to "actually do a better job of responding" to fans.  (FAC ¶ 40.)

The method by which Tom Brady made this announcement and the text of the announcement itself indicate that it would not have been objectively reasonable to believe that someone texting the number in the tweet would be communicating directly and privately with Tom Brady.  Plaintiffs do not allege otherwise and instead allege only their subjective (unreasonable) belief that the phone number in Tom Brady's tweet was a "direct line[]" to him.  (FAC ¶ 140.)  This is plainly insufficient.  *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 816–17 (N.D. Cal. 2020) (dismissing analogous claims where plaintiffs failed to allege that they used their devices in circumstances giving rise to an objectively reasonable expectation of privacy); *In re Google Inc. Gmail Litig.*, No. 13-MD-

21

02430, 2013 WL 5423918, at *23 (N.D. Cal. Sept. 26, 2013) (finding email recipients do not have an objectively reasonable expectation of privacy because "[u]nlike phone conversations, email services are by their very nature recorded on the computer of at least the recipient, who may then easily transmit the communication to anyone else who has access to the internet or print the communications").

### D.   Plaintiffs' CIPA Section 632 and 632.7 Claims Also Fail Because Plaintiffs Consented to Community's Involvement.

CIPA sections 632 and 632.7 apply only to recordings made "without the consent of all parties." Cal. Penal Code §§ 632, 632.7.  Consent can be express or implied. *Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, No. 12-CV-01685-BAS(JLB), 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016) (CIPA claim failed because plaintiff failed to prove a lack of consent).  Consent may be implied from the overall "surrounding circumstances" of the communication. *Id.*

Here, as discussed above, the content of Tom Brady's message and the method of dissemination indicated that Brady was not sharing his personal cell phone number and instead was using a "tool" to allow him to communicate with his followers.  Tom Brady's tweet invited fans to send him a text at his Community number to communicate with him.  Plaintiffs admit that they then sent texts to that number.  By doing so, they consented to receiving the challenged texts, which were sent in *direct response* to Plaintiffs' requests.  Sending the text to the number Tom Brady identified reflected Plaintiffs' consent to receive texts about using the "tool" that would enable fans to communicate with Tom Brady.  Plaintiffs' CIPA claims should be dismissed.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Community respectfully requests that the Court dismiss the FAC.

Dated:  June 8, 2021                    MORRISON & FOERSTER LLP

By:      */s/ Tiffany Cheung*

Attorneys for Defendant
COMMUNITY.COM, INC.

23

sf-4503162