UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: 2:21-cv-02416-SB-JPR | Date: August 2, 2021 |
|---|---|

| Title: | *Adler v. Community.com, Inc.* |
|---|---|

| Present: The Honorable | **STANLEY BLUMENFELD, JR., U.S. District Judge** |
|---|---|

| Victor Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings: ORDER GRANTING MOTION TO DISMISS IN PART (DKT. NO. 23)**

Before the Court is Defendant Community.com, Inc.'s motion to dismiss. Dkt. No. 23 (MTD); *see* Dkt. Nos. 25 (Opp.), 29 (Reply).

## I. BACKGROUND

According to the first amended class action complaint, Defendant sent two, automated text messages to Plaintiffs, without Plaintiffs' consent, in response to Plaintiffs' initial messages sent to a number believed to be the well-known professional football player Tom Brady's personal number. Dkt. No. 14 (FAC) ¶¶ 39-49, 116. Plaintiffs contend that Defendant's business practice regarding text messages violates multiple statutory provisions and seek to bring a class action on behalf of individuals who have suffered the same alleged violations.

## A. Factual background

Defendant is a company which "permits its clients—including actors, musicians, athletes, and social media influencers—to communicate directly with their fans or followers through SMS text messaging." FAC ¶ 52. Defendant provides its celebrity clients—i.e., its "Community Leaders"—with a "Community number" which is distributed to their fans and followers. MTD 3. After sending a message to a Community number, "[t]he individual immediately receives a direct response to his or her request: a customized message provided by the Community Leader, along with a link to confirm sign up for that Leader's community via Community's platform." *Id.* at 4; *see* FAC ¶¶ 41-44, 88-90.

On March 15, 2021, Brady posted a message and video from his account on the Twitter social media platform. FAC ¶¶ 39-40, 88, 102. The message stated: "Trying something new here…Hit me up at (415) 612-1737. Rule #1…no texting on Gamedays." *Id.* ¶ 39. The accompanying video featured Brady stating:

> Hey what's up everyone? So this is a real first for me, but I've been talked into giving out my cell phone on the internet. So, listen, rule #1 before we get into any of this: no texting on gamedays. Really though, what this is is it's a tool that will allow me to communicate more directly with my fans and my followers where we can actually do a better job of responding to you and your questions and all the great messages. Sometimes it gets hard to sort through the "you suck, Brady" in the comments. I know there's quite a few of those over the years. It's usually from the Jet fans. But to be clear, if you do text me "you suck", yes I'll see it, and uh, I may or may not respond. So shoot me a message, I promise I'm going to get back to as many of you guys as possible when I have the time.

*Id.* ¶ 40. Plaintiffs sent a text message and received two messages in return. First, they received a "a link to Defendant's community.com service which, when clicked, requires the texting party to sign up for Defendant's service to proceed further." *Id.* ¶ 43. Second, they received a message purportedly from Brady, stating "What's up! Yes, this is actually Tom Brady. This message is automated but everything else will come directly from me, on my phone. Click the link and add yourself so you're in my contacts." *Id.* ¶ 45. According to the complaint, Defendant "appears to have employed this same ruse through other prominent personalities' social media accounts, specifically including but not limited to: Jennifer Lopez, Ellen DeGeneres, Karlie Kloss, Ashley Graham, The Jonas

Brothers, Kerry Washington, Arianna Huffington, Mark Cuban, Tony Hawk, Ryan Seacrest, Deepak Chopra, and Sophia Bush." *Id.* ¶ 51.

To communicate with the Community Leader, a person must click on the link sent from Defendant, complete the sign-up process, and agree to the terms of service. MTD 4. The more people that sign up with the link, the more that Community Leader pays Defendant. FAC ¶ 50. Plaintiffs did not complete the sign-up process. *Id.* ¶ 120. As a result, the only messages received in response to Plaintiffs' original texts were the two automated messages. Allegedly "[i]t is only after someone sends a text message to the number that they learn that the number is not actually the celebrity's personal number, but is instead part of a social media service for which the person must sign up before being able to continue ostensibly corresponding with the celebrity." FAC ¶ 49.

## B. Claims and classes

Plaintiffs' first amended complaint brings six claims. With the first and second claims, Plaintiffs allege Defendant has violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b)(1)(A)(iii) and 227(c). Among other things, these provisions (and related regulations) govern the use of automatic telephone dialing systems and telephone solicitations. § 227(b)(1)(A)(iii), (c).

With the third, fourth, and fifth claims, Plaintiffs allege violations of the California Invasion of Privacy Act (CIPA), Cal. Penal Code §§ 631, 632, and 632.7. In pertinent part:

- Section 631 imposes liability on any person who "by means of any machine, instrument, or contrivance, . . . and without the consent of all parties . . . reads, or attempts to read, or to learn the contents or meaning of any . . . communication while the same is in transit . . . or is being sent from, or received at any place within this state. . . ."

- Section 632 imposes liability on any person who "without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication . . . ."

- Section 632.7 imposes liability on any person who "without the consent of all parties to a communication, intercepts or receives and intentionally

records . . . a communication transmitted between two cellular radio telephones . . . ."

And with the sixth claim, Plaintiffs allege a violation of the Wiretap Act, a part of the federal Electronic Communications Privacy Act (ECPA), 18 U.S.C. § 2511. That provision imposes liability on any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . ." § 2511(1)(a).

Based on these purported violations, the complaint articulates four proposed classes pursuant to Federal Rule of Civil Procedure 23:

- B Class: Since March 18, 2017, Plaintiffs and all persons who sent a text message to a number assigned to one of Defendant's clients and received back at their cellular telephone number an automated text message containing a link to sign up for Defendant's website.

- C Class: Since March 18, 2017, Plaintiffs and all persons who sent a text message to a number assigned to one of Defendant's clients and received back at their cellular telephone number two automated text messages of the type described herein.

- CIPA Class: Since April 5, 2020, Plaintiffs and all persons in the United States who sent a text message to a number assigned to one of Defendant's clients and did not subsequently register for Defendant's Community.com service.

- ECPA Class: Since April 5, 2019, Plaintiffs and all persons in the United States who sent a text message to a number assigned to one of Defendant's clients and did not subsequently register for Defendant's Community.com service.

## II. DISCUSSION

Defendant moves to dismiss all claims brought against it in the first amended complaint. Dkt. No. 23. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted). The Court may consider "only allegations

contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation omitted).

### A. TCPA claims

Defendant first moves to dismiss Plaintiffs' first and second claims, which arise from purported violations of the TCPA. MTD 7-13. Defendant contends that Plaintiffs fail to state a claim under TCPA § 277(b)(1)(A)(iii) because there are no sufficient allegations that Defendant uses an "autodialer." MTD 7-10. Defendant also argues that Plaintiffs fail to state a claim under TCPA § 277(c) because the text messages sent by Defendant were not solicitations to purchase or invest and because the "established business relationship" exception applied. MTD 10-13.

In their opposition, however, Plaintiffs do not contend that the complaint states valid TCPA claims. Rather, they simply note that "Plaintiffs do not oppose the motion [to dismiss] as to those two claims." Opp. 1 n.1. Given the lack of opposition to the motion to dismiss as to these claims, the Court **DISMISSES** the two TCPA claims **WITH PREJUDICE**.

### B. Wiretap Act section 2511 and CIPA section 631

Defendant also seeks dismissal of the remaining claims, arising under the federal Wiretap Act and California's CIPA. The Court will look first to Defendant arguments to dismiss the Wiretap Act section 2511 and CIPA section 631 claims.

Defendant argues that Plaintiffs' have not alleged a claim under the Wiretap Act section 2511 and CIPA section 631 because Defendant "does not capture text messages in transit or intercept them." MTD 18-20. The federal ECPA defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). And the Ninth Circuit has instructed that for a communication "to be 'intercepted' in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Here, Defendant argues that this definition is not satisfied because, at most, any purportedly wrongful access it had to Plaintiffs' texts occurred after the text messages had already been received, not while the messages were transmitted. MTD 18-20.

Plaintiffs do not seem to dispute that Defendant could not access the contents of the text messages at issue until they were received at the celebrity's Community number. Rather, Plaintiffs allege that Defendant "read, or attempted to read, or attempted to learn the contents of the messages sent to its celebrity clients before those messages *actually reached their celebrity clients* (i.e. while in transit)." FAC ¶ 148 (emphasis added). So according to Plaintiffs, even though Defendant did not technically acquire the communication during its transmission, an "interception" occurred because Defendant "hijacked" the messages before they reached their "intended recipient." Opp. 7 n.6. The Court, however, does not understand that to be the correct interpretation of "intercept," which *Konop* read to have a "narrow definition" limited to "acquisition contemporaneous with transmission." 302 F.3d at 878. Indeed, to arrive at that interpretation, the Ninth Circuit relied heavily on *Steve Jackson Games, Inc. v. United States Secret Service*, 36 F.3d 457 (5th Cir.1994), in which "the Fifth Circuit held that the government's acquisition of email messages stored on an electronic bulletin board system, but *not yet retrieved by the intended recipients*, was not an 'interception.'" *Konop*, 302 F.3d at 878 (emphasis added). Looking to *Konop* and *Steve Jackson*, this Court does not interpret "intercept" to broadly encompass the acquisition of communications any time before the intended recipient gains access to those communications.

In short, Plaintiffs have not alleged that Defendant intercepted a communication for purposes of the Wiretap Act. As alleged, Plaintiffs sent text messages to a celebrity's Community number, and the device paired with that number "received the information, effectively completing the communication." *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001). Defendant's alleged access of that communication upon the completion of its transmission to the proper number is not the sort of act contemplated by federal law. *Rosenow v. Facebook, Inc.*, No. 19-CV-1297-WQH-MDD, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (dismissing Wiretap Act claim where there were no allegations giving rise to a plausible inference defendant "captured or redirected . . . communications while in transit") (internal quotations omitted).[1]

---

[1] Defendant also contends it is covered by the Wiretap Act's "ordinary course of business" exception. "The exception offers protection from liability only where an electronic communication service provider's interception facilitates the transmission of the communication at issue or is incidental to the transmission of such communication." *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *8 (N.D. Cal. Sept. 26, 2013). The Court need not reach this issue in light of its conclusion about the lack of interception.

This analysis also bears on Plaintiffs' claims arising under California's CIPA section 631. As noted, that provision protects a communication "while" the communication "is in transit . . . or is being sent from, or received at any place within this state. . . ." Cal. Penal Code § 631(a). Plaintiffs contend Defendant attempted to learn the contents of their text messages while those messages were "in transit," Opp. 6-9, but that argument fails for the same reason it failed under the federal Wiretap Act claim.

Even so, Plaintiffs argue that they still state a section 631 claim because that provision also prohibits the nonconsensual access of communications "*received* at any place within this state." Opp. 9 (emphasis added); *see id.* ("It is not just unlawful to access the content of messages while 'in transit,' but also to do the same with a message 'received at' any place within California."). According to Plaintiffs, the messages were alleged to be received in California because they were delivered to Defendant's servers in California and Brady's publicized number had a San Francisco area code. Opp. 9-10. But the Court does not understand section 631 to prohibit access to any communications received in California. That would be an interpretation of extraordinary breadth. Rather, that provision imposes liability for accessing a message "*being* sent from, or received" in California. § 631(a) (emphasis added). As one recent court put it, this requires plausible allegations that the defendant "read or learned the contents of a communication while the communication was in transit, or *in the process of being sent or received*." *Mastel v. Miniclip SA*, No. 2:21-cv-00124 WBS KJN, 2021 WL 2983198, at *4 (E.D. Cal. July 15, 2021) (emphasis added). Here, as discussed, there may be allegations that Defendant accessed the communications before they "actually reached their celebrity clients." FAC ¶ 148. But there is no plausible allegation that Defendant acted to learn the contents of the messages while they were, in a technical sense, in transit or in the process of being received.

Thus, the Court concludes that, as pleaded, the complaint fails to state violations of either section 2511 of the Wiretap Act or section 631 of CIPA. It appears clear that these deficiencies cannot be cured. The Court heard argument on whether the dismissal should be with or without prejudice**.** Plaintiff's counsel asserted that an amended complaint could provide more detailed allegations about the process by which the text messages were processed by Defendant's platform—in particular that the messages were received but held in abeyance such that the celebrity client could not access them until the user signed up for Defendant's platform. But these additional allegations, if permitted, would only confirm that Defendant did not "intercept" these communications or access them in transit;

instead, Defendant allegedly accessed the messages after they were received at the number where they were sent.[2] Because amendment would be futile, the Court **DISMISSES** these claims **WITHOUT LEAVE TO AMEND**.[3]

### C. CIPA sections 632 and 632.7

Defendant also moves to dismiss Plaintiffs' claims arising under CIPA sections 632 and 632.7. MTD 21-22. Section 632 makes it unlawful to "intentionally and without the consent of all parties to a confidential communication, use[] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." Section 632.7 imposes liability on any person who "without the consent of all parties to a communication, intercepts or receives and intentionally records . . . a communication transmitted between two cellular radio telephones . . . ."

---

[2] Defendant repeatedly emphasizes that it is a platform facilitating communication rather than an eavesdropper. MTD 2, 3-4, 13-15. As Plaintiffs point out, no general "platform-facilitating-communications" exception exists under CIPA or the Wiretap Act. Opp. 13. But some recent cases have indicated that software service providers are not third-party eavesdroppers when they simply assist one party to the communication "record and analyze its own data." *Graham v. Noom, Inc.*, No. 20-CV-06903-LB, 2021 WL 1312765 (N.D. Cal. Apr. 8, 2021) at *4-6; *see Yale v. Clicktale, Inc.*, No. 20-cv-07575-LB, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) ("Clicktale is not a third-party eavesdropper. It is a vendor that provides a software service that allows its clients to monitor their website traffic."). Those cases declined to impose liability under CIPA section 631(a) where the defendant merely provided a "tool" to an existing party to the communication and there were "no allegations . . . that [the defendant] intercepted and used the data itself." *Noom*, 2021 WL 1312765, at *5. Though it is not clear from the pleadings that Defendant's social media platform is perfectly analogous, the Court need not resolve the application of those cases in the absence of proper allegations of Defendant's interception of the messages.

[3] Plaintiff's counsel also argued that dismissal without leave would be premature because discovery related to the remaining claims may reveal more about the technical workings of Defendant's system. If Plaintiffs learn additional facts in discovery that would cure the legal deficiencies identified in this order, they may seek leave to amend to re-plead these dismissed claims.

Defendant seeks dismissal of the CIPA section 632 claims on the ground that the texts sent to Brady were not "confidential communications." MTD 21-22. Brady announced his Community number in a tweet to his 1.9 million Twitter followers in which he called the number "a new 'tool'" to aid in responding to his fans. *Id.* at 21. Defendant argues that both the method and text of the announcement "indicate that it would not have been objectively reasonable to believe someone texting the number in the tweet would be communicating directly and privately with Tom Brady." *Id.* A communication is "confidential" if "a party to the conversation had an objectively reasonable expectation that the conversation was not being overheard or recorded." *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1396 (2011). And whether a communication is "confidential" turns on "numerous specific factors" and is "generally a question of fact." *Id.* Here, even Defendant's motion highlights that it provides a platform "enabling direct, meaningful and instant communication." MTD 3 (quoting FAC ¶ 53). At the pleadings stage, the Court declines to definitively resolve whether Plaintiffs could not possess a "reasonable expectation that no one [was] secretly recording" their messages, *Kight*, 200 Cal. App. 4th at 1396, particularly when Defendant operates a platform intended to build "a more personal connection than possible on social platforms or via email," MTD 15.[4]

Defendant also moves to dismiss both the CIPA section 632 and section 632.7 claims on the ground that Plaintiffs, by sending text messages to the celebrity clients' respective Community numbers, "consented to receiving the challenged texts, which were sent in *direct response* to Plaintiffs' requests." MTD 22. Plaintiffs correctly note that their purported consent to receiving the automated text messages is "irrelevant," and that instead "[t]he question is whether Plaintiffs

---

[4] At the end of a string cite supporting a different point, Defendant cites *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *23 (N.D. Cal. Sept. 26, 2013) for the proposition that "[u]nlike phone conversations, email services are by their very nature recorded on the computer of at least the recipient, who may then easily transmit the communication to anyone else who has access to the internet or print the communications." MTD 21-22. Indeed, "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications." *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014). Though that logic would seemingly extend to text messages sent by phone as well, the Court declines to extend California law to a new context without adequate briefing or dismiss on a theory not actually raised.

consented to Defendant eavesdropping on and recording their messages . . . ." Opp. 20. Moreover, even construing Defendant's argument to say Plaintiffs' consented to Defendant's general involvement in the communications, the "critical question" for determining consent is whether the party in question "had adequate notice" it was being surveilled. *Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, No. 12-CV-01685-BAS(JLB), 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016). Here, Plaintiffs specifically and plausibly pled that they were not aware of Defendant's involvement until the automated text messages were sent in response. FAC ¶¶ 124.

Thus, the Court rejects Defendant's limited arguments as to the section section 632 and section 632.7 claims.

## III. CONCLUSION

For these reasons, the Court:

- **GRANTS** the motion to dismiss as to the TCPA section 277(b)(1)(A)(iii) and 227(c) claims **WITH PREJUDICE**;

- **GRANTS** the motion to dismiss as to the Wiretap Act section 2511 and CIPA section 631 claims **WITHOUT LEAVE TO AMEND**; and

- **DENIES** the motion as to the CIPA sections 632 and 632.7 claims.